[Docket No. 207]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Crim. No. 17-488-2 (RMB/KMW) |
| WILLIAM ROLAND, | **SUPPLEMENTAL OPINION TO PRIOR ORDER** |
| Defendant. | |

**BUMB, U.S. District Judge**

This matter comes before the Court upon a letter from counsel for the defendant, William Roland ("Defendant" or "Roland") [Docket No. 328], requesting that the Court supplement its Text Order, entered on June 25, 2019 (the "2019 Order") [Docket No. 218], denying Defendant's Motion for New Trial. For the reasons set forth in greater detail below, Defendant's request that the Court file an accompanying supplemental opinion is granted,[1] and the motion for new trial is denied. As previously ruled by this Court, the jury's verdict is not contrary to the

---

[1] Pursuant to Third Circuit Local Appellate Rule 3.1, "[n]o later than 30 days after the docketing of a notice of appeal, the trial judge may file and transmit to the parties a written opinion or a written amplification of a prior written or oral recorded ruling or opinion." Here, the Notice of Appeal was filed on March 16, 2022 [Docket No. 310], such that the 30-day window for the Court to supplement its 2019 Text Order has passed. Nonetheless, the Court hereby intends to clarify the reasoning behind its prior ruling, having received express consent from Defendant to file a clarifying written opinion and supplement the record for purposes of a more meaningful review on appeal, which is currently pending.

weight of the evidence presented by the Government at trial.

I.   BACKGROUND

On April 18, 2019, the jury returned guilty verdicts against Roland on the following three charges: (Count 1) conspiracy to distribute and possess with intent to distribute 280 grams or more of crack cocaine, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(A), and mixtures of furanyl fentanyl and heroin, contrary to 21 U.S.C. § 841(a)(1) and (b)(1)(C), and all in violation of 21 U.S.C. § 846; (Count 3) distribution and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and (Count 9) possession with intent to distribute 280 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). [Docket No. 205.] The jury also returned guilty verdicts on Count 1 as to co-defendants John Gunther and Taleaf Gunther, as well as other charges against them. [*Id.*]

Roland filed a Motion for New Trial and Memorandum in Support on April 30, 2019. [Docket No. 207 (hereafter, "Defendant's Brief").] Therein, Roland argues that "[t]he greater weight of the evidence presented by the government at trial supported the conclusion that the [d]efendant had not joined the conspiracy which existed between John Gunther, Taleaf Gunther, and others." [*Id.* at 3.] Instead, Roland argues that "[t]he greater weight of the evidence proved only that he had been a separate actor, whose individual enterprise was usurped by Taleaf Gunther," and that his actions "amount to mere presence and self-preservation, but not to a unity of purpose." [*Id.*] Roland's defense counsel made this same argument to the jury during closing argument, and the jury rejected it.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 33(a) provides, in pertinent part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Rule 33 motions are directed to the sound discretion of the trial court. *See United States v. Silveus*, 542 F.3d 993, 1004 (3d Cir. 2008) (citations omitted). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *Id.* (*quoting United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)).

Further, "even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *Id.* at 1004–05 (*quoting Johnson*, 302 F.3d at 150 (citation and quotation marks omitted)). In his supporting brief, Defendant "acknowledges that the granting of Rule 33 motions 'are not favored,' and 'are to be granted sparingly and only in exceptional cases.'" [Defendant's Brief at 3 (*quoting Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987).]

## III. ANALYSIS

### A. Roland's Argument for New Trial

Rather than argue that the overall weight of the evidence is contrary to the

jury's verdict, Roland centers his argument around one "specific event which was repeatedly highlighted at trial, and dealt directly with whether or not the defendant was a member of the conspiracy." [Defendant's Brief at 3.] More specifically, Roland contends that on April 26, 2017, a man named Brett Ashton ("Ashton") called co-defendant Taleaf Gunther "to complain that he was not being served." [*Id.*] In his brief, Roland admits that after receiving Ashton's call, Taleaf Gunther called Latoya Whealton ("Whealton"), who in turn handed the phone to Roland—the phone hand-off being captured by pole camera surveillance—then, "[t]here was an exchange between Roland and Gunther where Gunter indicated his desire to Roland to have [controlled dangerous substances ("CDS")] provided to Ashton." [*Id.*]

Roland contends that the footage shown to the jury failed to establish his role in the conspiracy because it "did not demonstrate any actual delivery of drugs, and no drugs were recovered from the sale." [*Id.*] Roland also criticizes the Government for showing a PowerPoint slide to the jury that showed still shots of Roland accepting Taleaf Gunther's phone call (by accepting the phone from Whealton) and on that same slide showing "a picture of CDS marked with the 'Casino' stamp." [*Id.* at 4.] According to Defendant, this wrongly implied to the jury that the evidence proved he had "sold CDS marked 'Casino' to Brett Ashton at the behest of Teleaf Gunther." [*Id.*]

In support of his Motion for New Trial, Defendant also accuses the Government of arguing, during its closing argument, that "defense counsel was intentionally misleading [the jury] as to the law, and hiding information." [*Id.*] For

4

the avoidance of doubt, the Court is not persuaded that the Government's relevant argument at trial, as cited by Defendant in his supporting brief, was as broad as Defendant now contends:

> William Roland's attorney, I guess, must have missed some of the daily interactions that Mr. Roland had with everybody else on the block. I mean, she must have missed the part where Taleaf Gunther calls William Roland and orders him to go do things, or where Latoya Whealton is out there with him handing him the phone as they're all having discussions. All of those things that kind of glided over.
>
> Instead, she suggests that, well, they might not have been friends. Taleaf Gunther and William Roland may not have been friends, and now I guess I'll say this, if Judge Bumb instructs you that as a matter of law, every member of a co-conspiracy has to be best friends with everybody else, well, then, I guess you go back there and find them all not guilty. But she's not going to instruct you on that because that's not the law. Ms. Davies knows that.

[Docket No. 198, at 133, lines 10–24.]

Roland is correct that the Court denied his counsel's request to include a curative instruction, and that the Court "sternly instructed [the Government] not to continue to make similar denigrating remarks towards the two remaining defense attorneys." [Defendant's Brief at 5.] Nevertheless, Roland contends that the jury was left to believe that the prosecution had a reason to attack the credibility of his defense counsel, and since "[o]ne of the key pieces of evidence used to demonstrate his intent" to join the conspiracy "was improperly presented to the jury in closing," his guilt "was never proven beyond a reasonable doubt." [*Id.* at 5–6.]

### B. The Greater Weight of the Evidence Presented at Trial Supports the Jury's Verdict

The Court is not persuaded by Roland's contention that the jury returned a

verdict contrary to the weight of the evidence presented by the Government at trial. In fact, the Court is of the persuasion that the Government presented overwhelming evidence of Roland's membership in the drug conspiracy for which he was found guilty. By focusing his argument on the handed-off phone call between Roland and Taleaf Gunther on April 26, 2017, regarding Ashton's request for CDS, Defendant ignores the greater bulk of evidence presented to the jury.

 The Government is correct that during the FBI investigation resulting from the charges and convictions against Roland, which took place during the eight-and-a-half-month period from October 2016 through June 13, 2017, Roland personally sold crack cocaine and what was marketed as heroin to the FBI's confidential informant on at least four (4) different occasions. [Docket No. 210 (hereafter, the "Government's Brief"), at 4.] Among video and audio recordings from these controlled purchases, the seized drugs, and lab reports confirming the presence of CDS, the Government also introduced the testimony of FBI Special Agent Andrew Rixham and Camden County Prosecutor's Office Detective Randall MacNair regarding the controlled purchases from Roland. [*Id.* (*citing* Trial Transcript at 559–72, 818–24; Exhibits 20-A, 20-B, 20-P, 21, 21-L, 25-A, 25-B, 25-P, 26, 26-L, 40-A, 40-B, 40-P, 42, 42-L, 43, 43-L, 50-A, 50-B, 50-P, 51, and 51-L).] The Government also produced evidence showing that the distinctive stamps found on the packaging for drugs found at the scene of Roland's arrest, as well as drugs seized from his residence, were "identical to many of the small crack baggies acquired during controlled purchases from Taleaf Gunther," connecting Roland to the drug

conspiracy. [*Id.* at 5 (citations omitted).] Other evidence presented by the Government at trial included intercepted telephone communications between John Gunther, the leader of the organization, and Roland, keeping Roland apprised of scheduled drug purchases, coordinating the collection of drug sales proceeds, and preparing and packaging drugs for distribution. [Government's Brief at 6.]

On June 13, 2017, the last day of the FBI investigation, law enforcement executed court-authorized searches of three residences, including an apartment at 1501 Little Gloucester Road, Blackwood, New Jersey where officers found Roland, John Gunther, and Rajai Gaines with a large quantity of cocaine base and drug paraphernalia. [*Id.* at 7 (*citing* Trial Transcript at 256–60, 1442–44).] The jury heard testimony from two special agents who participated in the search personally, testimony from the K-9 officer whose drug dog alerted inside the apartment, photos of drugs and paraphernalia seized, and testimony from the Drug Enforcement Administration chemists who confirmed the presence of cocaine. [Government's Brief at 7–8 (citations omitted).] The jury also received several hundred text messages between John Gunther and Roland, including numerous incriminating discussions between the two about drug dealing activity. [Government's Brief at 8 (*citing* Exhibit 395).] The Government is also correct that the jury was shown numerous other pole camera photographs and videos of Roland on the 1700 block of Filmore Street, and cooperating defendant Whealton testified that when she worked shifts to sell drugs on that block, she would obtain drugs from Roland and give proceeds from those sales back to him. [Government's Brief at 10 (*citing* Trial Transcript at 982, 989-90).]

7

With respect to the events that transpired on April 26, 2017, regarding Ashton's request for CDS, the Court agrees that the jury could have drawn the conclusion that Roland helped accomplish a sale, but it did not have to do so to support the guilty verdict it returned, considering the myriad of other evidence that incriminated Roland. [Government's Brief at 13.] Finally, the Court finds that the Government was well within its discretion to argue that even if Roland and co-defendant Taleaf Gunther had a bad relationship, as defense counsel suggested during its summation, it does not necessarily follow that Roland was not a part of the conspiracy. [Trial Transcript 1792.] The Court sternly warned the Government not to use *ad hominems* and that if another attack of defense counsel's integrity occurred, it would be brought to the jury's attention as improper. But the warning was well received by the Government, and it did not happen again.

## IV.   CONCLUSION

The Government presented overwhelming evidence in support of its case, and in turn, the jury returned a verdict consistent with the vast amount of evidence presented to it at trial. In addition, the Court finds that no prejudice resulted from it declining to give a curative instruction as requested by defense counsel. Accordingly, Defendant's Motion for New Trial is **denied**.

July 13, 2022                                                  s/Renée Marie Bumb
Date                                                                Renée Marie Bumb
                                                                       U.S. District Judge