[Docket No. 368]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM ROLAND,<br><br>Defendant. | Criminal No. 17-488-RMB-2<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**:

Defendant William Roland asks this Court for compassionate release.  [Docket No. 368 (the "Motion" or "Pl.'s Br.").]  Roland mainly argues that the Presidential commutation of his co-Defendant Taleaf Gunther ("Gunther") has resulted in a sentence disparity warranting a reduction of his sentence.  *See* [*id.*; Docket No. 385 ("Pl.'s Reply Br.").]  This Court disagrees.  For the reasons that follow, Gunther's Presidential commutation, taken together with the other circumstances set forth by Roland, are not extraordinary and compelling reasons to justify compassionate release.  That aside, the 18 U.S.C. § 3553(a) factors counsel against release and Roland still presents a danger to the community. Accordingly, the Court **DENIES** the Motion.

## I.    BACKGROUND

Roland has spent much of his life dealing drugs.  Starting in 2002, Roland collected one conviction after another at the state level for possession with the intent to distribute heroin and crack cocaine, one of which occurred within a school zone.  [Presentence Report ¶¶ 133– 37 ("PSR").]  Roland has also shown a proclivity for violence, having been convicted for

riotous behavior, unlawfully possessing weapons, and aggravated assault. [*Id.* ¶¶ 130–32, 137.] Undeterred by New Jersey's efforts to rein him in, Roland continued on with his criminal ways by managing the distribution of crack cocaine, furanyl fentanyl, and heroin in Camden, New Jersey, for the Gunther Drug Trafficking Organization led, in part, by Gunther.[1] [*Id.* ¶¶ 55, 58.] The enterprise soon caught the eye of federal authorities and, following an extensive investigation, the Federal Bureau of Investigation apprehended Roland and his co-conspirators on June 13, 2017.[2] [*Id.* ¶¶ 61, 80–82.]

After the Government "presented overwhelming evidence of Roland's membership in the drug conspiracy" at trial, [Docket No. 329, at 6], the jury found Roland guilty of: (1) conspiracy to distribute and possess with intent to distribute cocaine base, furanyl fentanyl, and heroin, in violation of 21 U.S.C. § 846; (2) distribution and possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (3) possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), [Docket No. 195]. As a result of these convictions, Roland faced 30 years to life imprisonment because he qualified as a career offender. [PSR ¶¶ 138–40, 175–76.] The Court found at the sentencing hearing that Roland did not act as a manager or supervisor in this case and accordingly did not assess the three-level enhancement under U.S.S.G. § 3B1.1(b). [Docket No. 312, at 21:16–20.] And, after considering Roland's lack of youthful guidance, efforts to turn his life around, and the Court's concern in imposing the same sentence on

---

[1] Roland not only managed the organization's sales, preparation, and packaging of drugs but also sold cocaine base, furanyl fentanyl, and heroin to dummy buyers on multiple occasions during the course of the federal investigation. [PSR ¶ 70.]

[2] At the time of his arrest, federal authorities caught Roland processing a bulk quantity of cocaine base and attempting to destroy evidence upon realizing he had been found out. [*Id.* ¶ 82.]

Roland as Gunther, a co-leader of the drug conspiracy, this Court varied downward and sentenced Roland to 25 years in prison followed by 5 years of supervised release. [*Id.* at 80:23–25, 81:8–22, 82:17–24.]   As relevant here, the jury also returned guilty verdicts against Gunther, whom this Court sentenced to 360 months, or 30 years, of imprisonment and 10 years of supervised release.  [Docket Nos. 195; 315.]

Nearly three years after this Court's sentencing, on January 17, 2025, President Joseph R. Biden Jr. commuted Gunther's sentence from 360 months down to 220 months.  [Docket No. 359.]  The accompanying White House press release did not provide any individualized findings, only remarking that President Biden was "commuting the sentences of nearly 2,500 people convicted of non-violent drug offenses who are serving disproportionately long sentences compared to the sentences they would receive today under current law, policy, and practice."  [Docket No. 385, Ex. G. ("Gov't's Opp. Br.").][3]  The President explicated a bit, stating that he sought to remedy lengthy sentences on the basis of "discredited distinctions between crack and powder cocaine, as well as outdated sentencing enhancements for drug crimes."  [*Id.*]

In due course, Roland filed the instant Motion for a 140-month reduction of his own sentence in the form of compassionate relief from this Court.  According to Roland, Gunther's Presidential commutation and a "combination of circumstances—[a] gross sentencing disparity with a less culpable co-[D]efendant, [a] perfect institutional record, this Court's prior finding of reduced culpability, substantial time served, and zero recidivism risk—" are extraordinary and compelling.  [Pl.'s Reply Br. 7.]  The Government disagrees, maintaining

---

[3] Why the Government labeled the White House press release as Exhibit G in the absence of any preceding exhibits is unknown, but the Court adopts this assignation for simplicity.

that Roland's circumstances, individually or collectively, are not extraordinary and compelling, and that the § 3553(a) factors otherwise weigh in favor of continued incarceration. [Gov't's Opp. Br. 12–19.]

## II.    THE FIRST STEP ACT AND COMPASSIONATE RELEASE

A judgment of conviction that includes a sentence is a final judgment that district courts may only modify in limited circumstances. *Dillon v. United States*, 560 U.S. 817, 824 (2010) (citing 18 U.S.C. § 3582(b)). In 2018, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), "empower[ing] criminal defendants to request compassionate release for 'extraordinary and compelling reasons.'" *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020) (quoting 18 U.S.C § 3582(c)(1)(A)(i)). To obtain compassionate release under the First Step Act, an incarcerated defendant must show that: (1) he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier"; (2) extraordinary and compelling reasons warrant relief; (3) the factors set forth in 18 U.S.C. § 3553(a) support release; and (4) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i)–(ii).

Congress tasked the Sentencing Commission to define "extraordinary and compelling reasons" that would justify compassionate release. 28 U.S.C. § 994(t). Over time, the Sentencing Commission has provided examples of extraordinary and compelling reasons that support a sentence reduction. *See, e.g.*, *United States v. Rutherford*, 120 F.4th 360, 364–65 (3d Cir. 2024). In 2023, the Sentencing Commission amended the Policy Statement on compassionate release motions, listing the extraordinary and compelling reasons that justify

4

compassionate release.  U.S.S.G. § 1B1.13.  Relevant here, the Sentencing Commission recognizes that a criminal defendant's rehabilitative efforts and "any other circumstance or combination of circumstances" that "are similar in gravity to those" listed in § 1B1.13(b)(1)–(4) may constitute extraordinary and compelling reasons for a sentence reduction.  *Id.* § 1B1.13(b)(2), (5)–(6), (d).

In sum, "a defendant seeking a reduction in his sentence under the First Step Act 'bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release.'" *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020) (quoting *United States v. Sellers*, No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A))).  Preliminarily, all agree that Roland has exhausted administrative remedies. [Pl.'s Br. 2; Gov't's Opp. Br. 11.]  So, the Court must decide whether Roland has identified extraordinary and compelling reasons to justify compassionate release.

## A.  Extraordinary and Compelling Reasons

### 1.  Gunther's Presidential Commutation

The gravamen of the Motion is Gunther's supposed "glaringly lopsided" 220-month sentence created by Executive commutation.  [Pl.'s Br. 3.]  Roland simply believes it unfair that he must serve a 300-month sentence, the consideration of which involved this Court finding that he did not act as a manager or supervisor, while Gunther, who did receive an organizer or leader enhancement, enjoys a reduced 220-month sentence as a result of a Presidential commutation.  [Docket Nos. 312, at 21:16–20; 327, at 44:14–46:8.]  Some first principles, then consideration of the Presidential commutation received by Gunther.

First, "a sentencing disparity alone is not an extraordinary and compelling reason to reduce a sentence." *United States v. Castelluzo*, No. 13-00560, 2025 WL 2169977, at *4 (D.N.J. July 31, 2025) (citing *United States v. Wilson*, No. 14-209, 2020 WL 7872628, at *6 (E.D. Pa. Dec. 31, 2020)). Second and relatedly, "[a] criminal defendant has no constitutional right to be given a sentence equal in duration to that of his or her co-defendants." *United States v. Hart*, 273 F.3d 363, 379 (3d Cir. 2001) (citing *United States v. Smith*, 839 F.2d 175, 179 (3d Cir. 1998)); *see also United States v. Harder*, 759 F. App'x 117, 120 (3d Cir. 2018) (citation omitted) ("[A] criminal defendant has no constitutional right to receive the same sentence as his co-defendants.").

With these precepts in mind, the Court turns to President Biden's commutation of Gunther's sentence. As the Government recognizes, the Third Circuit has not squarely addressed whether a Presidential commutation of a co-defendant constitutes an extraordinary and compelling reason meriting compassionate release. [Gov't's Opp. Br. 13.] There is, however, a germinating consensus among District Courts that a Presidential commutation is not an extraordinary and compelling circumstance.

"[A]s a matter of constitutional principle, it is not for this Court to probe behind that Executive Branch decision." *United States v. Mason*, No. 21-499, 2025 WL 1404626, at *4 (S.D.N.Y. May 15, 2025). As Roland's own briefing acknowledges, "[i]t is unclear on what basis the President granted clemency to some, but not all, defendants in this case." *Id.* Roland "asserts that *whatever findings* [were] made in granting … Gunther a commutation of sentence apply equally to" him. [Pl.'s Br. 2 (emphasis added).] But, as the Government points out, there were no individualized findings, just generalized prescriptive policy pronouncements. *See* [Gov't's Opp. Br., Ex. G.] In fact, Roland even speculates that Gunther received his

6

commutation "perhaps as a result of [a] propitious relationship with an influential individual." [Pl.'s Br. 2–3.]  For "whatever reason," it is not for the Court to divine.  [*Id.* at 2.]  "[C]lemency is a power entrusted solely to the Executive." *Cavazos v. Smith*, 565 U.S. 1, 8–9 (2011).  "It is not for the Judicial Branch to determine the standards for this discretion.  If the clemency power is exercised in either too generous or too stingy a way, that calls for political correctives, not judicial intervention." *Id.* at 9.

"Second, § 1B1.13(b)(5)'s text does not authorize relief based on the commutations of the sentences of other persons." *Mason*, 2025 WL 1404626, at *5.  To reduce a sentence pursuant to that catch-all provision, the circumstances must be "similar in gravity" to those specified in § 1B1.13(b)(1)–(4).  As defined, however, those four provisions all involve newly arisen mitigating facts *particular to the defendant in question*. They involve medical circumstances, age, family circumstances, and abuse in custody.  U.S.S.G. § 1B1.13(b)(1)– (4).  "In contrast, the grants of clemency to … [Roland's] co-defendant[] do[es] not say anything about [Roland]. [It] do[es] not speak to—or bespeak an alteration of—his circumstances." *Mason*, 2025 WL 1404626, at *5.  Of course, this inappositeness is all the more supported by the fact that Gunther's commutation does not even speak to Gunther's own circumstances with any specificity.  *See* [Gov't's Opp. Br., Ex. G.]

For these reasons, the Court does not find Gunther's clemency a development of "similar gravity" to those specified, and to do so under these circumstances would uncomfortably privilege Judicial restraint over Executive prerogative.  Courts considering like applications have generally held that the commutations of others' sentences do not merit compassionate release under § 3582.  *See, e.g.*, *United States v. Askew*, 736 F. App'x 781, 785 (11th Cir. 2018); *Mason*, 2025 WL 1404626, at *4–*6; *United States v. McDonald*, No. 94-20256,

2020 WL 3166741, at *7–*8 (W.D. Tenn. June 8, 2020); *United States v. Wettstain*, No. 7-10, 2017 WL 9098063, at *2 (W.D. Ky. May 2, 2017) (denying defendant's motion for sentence reduction, noting that "President Obama's commutation of Defendant's sentence is an executive action that does not affect his eligibility for § 3582 relief."); *United States v. Gibson*, No. 94-454, 2017 WL 1301514, at *1 (D. Md. Apr. 7, 2017) (same); *but see United States v. Montgomery*, No. 18-77, 2021 WL 1857339, at *3 (M.D. Tenn. May 10, 2021) (finding commutation given to one defendant and not the other "constitute[d] extraordinary and compelling reasons for a sentence reduction"). Under these circumstances, "[g]ranting a motion for compassionate release is not comparable to a Presidential commutation." *McDonald*, 2020 WL 3166741, at *8. The Court accordingly denies the Motion to the extent it is based on President Biden's grant of clemency to Gunther.[4]

### 2. Roland's Rehabilitative Efforts in Prison

The Policy Statement recognizes that a defendant's rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B.13(d). But

---

[4] This line of reasoning also dispenses with Roland's derivative emphasis on this Court's prior finding that he did not act as a manager or supervisor. [Pl.'s Br. 6.] This too would require the Court to simulate Executive decision-making. "The executive can have many reasons for commutating a sentence, which might or might not be grounds for relief under § 3582(c)(1)(A)." *McDonald*, 2020 WL 3166741, at *8. It is not for the Court to surmise these grounds and accordingly reward compassionate relief. Roland's related argument that he will have "served a substantial period of incarceration that reflects the seriousness of his offense" if this Court mimics President Biden and awards him a 140-month reduction fails for the reasons above, and puts the cart way before the horse. [Pl.'s Reply Br. 7.] Of his 25-year sentence, Roland has only served approximately 7.75 years at the time he filed the Motion. Tellingly implicit in Roland's position is the recognition that he has *not* served a substantial amount of his 25-year sentence. As explained more below, the Court finds a nearly 12-year reduction inconsistent with the § 3553(a) factors, given the time remaining on Roland's sentence. *See infra*, at 9–11; *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) ("Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may … inform whether immediate release would be consistent with those factors.").

rehabilitation alone is not an extraordinary and compelling reason to justify compassionate release. *Id.*; *see also* 28 U.S.C. § 994(t); *United States v. Bledsoe*, No. 22-2022, 2022 WL 3536493, at *2 (3d Cir. Aug. 18, 2022) (citations and internal quotation marks omitted) ("[C]laimed efforts in furtherance of rehabilitation, while commendable, are expected, ... they are, standing alone, neither extraordinary nor compelling for purposes of the compassionate-release standard.").

While incarcerated, Roland has achieved his GED or high school diploma, completed drug education programs, worked as a maintenance mechanic, not incurred any disciplinary sanctions, and has a low risk of recidivism and requires low security. [Pl.'s Br. 6; Gov't's Opp. Br. 17.]  These efforts are commendable, but alone cannot demonstrate extraordinary and compelling reasons to warrant compassionate release. *Bledsoe*, 2022 WL 3536493, at *2. Because the record lacks "other circumstances that could constitute extraordinary or compelling reasons for a reduction," Roland's efforts toward rehabilitation do not support release. *United States v. Berrios*, No. 7-454, 2025 WL 654160, at *4 (D.N.J. Feb. 28, 2025) (quoting *United States v. Gantt*, No. 6-699, 2024 WL 3385493, at *3 (D.N.J. July 12, 2024)).

### B.  18 U.S.C. § 3553(a) Factors

Setting aside Roland's failure to present extraordinary and compelling reasons to justify compassionate release, the § 3553(a) factors that this Court must consider do not support a reduction.  Before granting compassionate release, courts must consider the § 3553(a) factors "to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  Those factors are: "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to

afford adequate deterrence to criminal conduct;" and "to protect the public from further crimes of the defendant." *Id.* § 3553(a)(1), (a)(2)(A)–(C).

A sentence reduction here would be inconsistent with the § 3553(a) factors. Starting with the nature and circumstances of the offense and Roland's history and characteristics, Roland, a career offender with a known violent propensity who has violated probation and parole in the past, was an active member of an "atrocious" drug trafficking ring that "destroyed" a community. [Docket No. 312, at 47:5, 56:21–22; PSR ¶¶ 55, 58, 70, 130–37.] Roland's extensive criminal history, much of it involving the drug trade, "reflect[s] a cavalier attitude toward the rule of law and his prior [convictions] had little deterrence effect on him." *United States v. Thomas*, No. 12-378, 2025 WL 2300921, at *5 (D.N.J. Aug. 11, 2025); [PSR ¶¶ 130–37.] These considerations weigh against compassionate release. *See, e.g.*, *United States v. Teal,* No. 19-735, 2021 WL 2374360, at *4 (D.N.J. June 10, 2021) (denying compassionate release, reasoning that § 3553(a) factors weighed against release where defendant "has literally led a life of crime, primarily consisting of drug dealing").

Turning to "the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," the Court finds that these too weigh against a reduced sentence. 18 U.S.C. § 3553(a)(2)(A)–(C). As the Court noted at his sentencing hearing, Roland "was given so much leniency over the years by the state, by the state courts, a lot of leniency, and one would have hoped that he would have gotten the message." [Docket No. 312, at 46:22–25.] Although the Court recognized that he lacked youthful guidance, Roland had the benefit of "a loving and supporting family network," yet his disobedience of the law and disregard for

10

its charity continued until he caught the eye of the federal government.  [*Id.* at 47:1–2, 81:21–22.]

Consequently, Roland's career-offender background and the seriousness of his crimes here called for 30 years to life imprisonment.  [PSR ¶¶ 138–40, 175–76.]  This Court nevertheless, as noted, considered Roland's youthful guidance, efforts to turn his life around, and junior role in the drug conspiracy and varied downward to 25 years followed by 5 years supervised release.  [Docket No. 312, at 21:16–20, 80:23–25, 81:8–22, 82:17–24.]  In the Court's view, this "just" sentence "reflect[s] the seriousness of the offense[s]" and "promote[s] respect for the law."  18 U.S.C. § 3553(a)(2)(A).  And Roland's request to reduce his sentence with more than 15 years remaining on it cannot be countenanced by this Court in the interests of deterrence and to shield the public, who "knows that if … Roland is in prison, they will be protected."  [Docket No. 312, at 79:23–80:1; *see Pawlowski*, 967 F.3d at  (explaining district courts may consider time remaining on defendant's sentence to determine whether compassionate release is appropriate).  In total, the Court finds the § 3553(a) factors heavily weigh in favor of continued incarceration.[5]

### C. The Policy Statement: Danger to Others

While the § 3553(a) factors weigh against compassionate release, so too does the Policy Statement.  The Policy Statement explains that not only does a defendant have to present extraordinary and compelling reasons for compassionate release and that the § 3553(a) factors must do so as well, but the defendant must also not be "a danger to the safety of any

---

[5] To the extent "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" applies here, 18 U.S.C. § 3553(a)(6), Roland simply repackages his Presidential-commutation argument rejected by the Court above.  [Pl.'s Reply Br. 18–19.]  In any event, all the other § 3553(a) factors addressed by the Court weigh against a reduction in sentence.

other person or to the community, as provided in 18 U.S.C. § 3142(g)."   U.S.S.G. § 1B1.13(a)(2).

As further noted above, Roland has an extensive criminal history including not only four previous state drug convictions, but also convictions for riotous behavior, unlawfully possessing weapons, and aggravated assault.  [PSR ¶¶ 130–37.]  Roland not only managed the sales, preparation, and packaging of crack cocaine, furanyl fentanyl, and heroin in Camden, New Jersey, for a drug-trafficking outfit but sold these drugs himself. [*Id.* ¶¶ 55, 58, 70.]  The Court need not dwell on the damage done to society by the scourge of illegal drugs but, as the record evidence showed, Roland played an "integral part" in this community's destruction, for example calling addicts "to a parade to come and see test samples and throw their lives away, all for money."  [Docket No. 312, at 77:16–19.]  And while "drug dealing [is] not necessarily violent, [it is] dangerous because [it] often leads to violence."  *Pitsilides v. Barr*, 128 F. 4th 203, 213 (3d Cir. 2025) (quoting *Folajtar v. Att'y Gen.*, 980 F.3d 897, 924 (3d Cir. 2020) (Bibas, J., dissenting)).

Given the nature of Roland's offenses, criminal history, and demonstrated recidivism, the Court finds that there remains a risk of danger to the community.  *Cf, e.g.*, *United States v. Brown*, No. 25-1757, 2025 WL1392161, *2 (3d Cir. May 14, 2025) ("The District Court appropriately considered Brown's 'prior convictions that qualified him as a career offender,' that his 'lengthy criminal history ... creates a very serious risk of danger to the community,' that his current convictions 'involved drug trafficking, possession of 65 grams of heroin, and possession of three firearms,' and that his plea agreement allowed him to avoid far lengthier mandatory minimum sentences."); *United States v. Lugo*, 832 F. App'x 799, 800 (3d Cir. 2021) ("In Lugo's case, the District Court considered the serious nature of Lugo's current cocaine

distribution conviction, along with his significant criminal history, which also includes reckless endangerment and possession of firearms in furtherance of drug trafficking.).

## III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Roland's Motion for Compassionate Release.  An accompanying Order shall issue.

<div style="display:flex; justify-content:space-between;">

**July 7, 2026**
Date

**/s/ Renée Marie Bumb**
Renée Marie Bumb
Chief United States District Judge

</div>